IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

Donna Wetherell and Robin Wetherell, *individually and as class action representatives*,

        Plaintiffs,

v.

ClimateMaster, Inc.,

        Defendant.

Case No. 07-CV-0696-MJR

## MEMORANDUM AND ORDER

**REAGAN, District Judge:**

Plaintiff Donna Wetherell sued Defendant ClimateMaster, Inc. on September 6, 2007 in the Circuit Court of Johnson County, Illinois seeking certification for a class action. ClimateMaster later removed the case to this Court on October 3, 2007, invoking the Court's subject-matter jurisdiction over diverse class actions, *see* **28 U.S.C. § 1332 (2006)**. Donna's husband Robin[1] joined as a plaintiff and alternate class representative about a year later on September 24, 2008. After various parts of their suit had been dismissed (*see* Docs. 50, 54, 55, 57), what remains is that the Wetherells accuse ClimateMaster of selling heat pumps to consumers that contained parts that ClimateMaster knew were defective. They argue that the conduct violated § 2 of the Consumer Fraud and Deceptive Business Practices Act (CFDBPA), **815 Ill. Comp. Stat. 505/2 (2008)**, and caused unjust enrichment.

Now ClimateMaster moves for summary judgment, arguing that, as the Wetherells knew that their alleged injury was wrongfully caused in 2002, their suit is time barred on all remaining claims.

---

[1]He will be referred to as "Dr. Wetherell" in the balance of this Order.

ClimateMaster provided the depositions of the Wetherells in support. The Wetherells of course oppose the motion but without avail. Filing a suit in September 2007 for an injury that arose in March 2002 is too late under Illinois law, and the Wetherells are unable to raise a genuine issue of fact contesting the 2002 date or to provide a legal reason that the date should be extended. The Court will accordingly grant ClimateMaster's motion.

## The Summary Judgment Inquiry

Courts should grant summary judgment to the moving party when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." **Fed. R. Civ. P. 56(c).** The party that moves for summary judgment "bears the initial responsibility of informing a court of the basis for its motion," meaning that it must identify the materials listed in Rule 56(c) that "demonstrate the absence of a genuine issue of material fact." *Keri v. Bd. of Trs. of Purdue Univ.***, 458 F.3d 620, 628 (7th Cir. 2006) (quoting *Celotex Corp. v. Catrett***, 477 U.S. 317, 323 (1986)).** The moving party may do so by "pointing out . . . that there is an absence of evidence to support the non-moving party's case." *Id.* **(quoting *Celotex Corp.***, 477 U.S. at 325).**

Once the moving party satisfies its burden, "the non-moving party must do more than raise a metaphysical doubt as to the material facts" if it wants to defeat summary judgment. *Id.* **(citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.***, 475 U.S. 574, 586 (1986)).** Because the primary purpose of summary judgment is to isolate and dispose of factually unsupported claims, the non-moving party cannot rest on the pleadings but must respond, with affidavits or other materials under Rule 56(c), setting forth specific facts that show a genuine issue for trial. **Fed. R. Civ. P. 56(e);** *Oest v. Ill. Dep't of Corrections***, 240 F.3d 605, 610 (7th Cir. 2001) (quoting Fed. R. Civ. P. 56(e)).** The "mere

existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, **477 U.S. 242, 248 (1986).** The non-moving party must also be careful as to what Rule 56(c) materials it proffers to the Court, as "conclusory allegations and selfserving affidavits, if not supported by the record, will not preclude summary judgment." *Haywood v. N. Am. Van Lines, Inc.*, **121 F.3d 1066, 1071 (7th Cir. 1999) (citing** *Darnell v. Target Stores*, **16 F.3d 174, 176–77 (7th Cir. 1994)).** The non-moving party does have one benefit, though, in that the Court must construe the Rule 56(c) materials in the non-moving party's favor, including all reasonable inferences from those materials. *Keri*, **458 F.3d at 628.**

## Factual background

Construing the materials in the Wetherells' favor, the Court assumes the following facts for purposes of deciding summary judgment:

The Wetherells purchased a geothermal heating and cooling unit from ClimateMaster on June 15, 1999. Soon after purchasing the unit, Fowler Heating and Cooling (not a party to this suit) installed the unit. (Dep. of Donna Wetherell 118; Dep. of Steven Fowler 73–74.) Beginning two years after the purchase of the unit, the Wetherells began experiencing problems and requested service from Fowler. First, the refrigerant was low, so Fowler added three pounds of refrigerant on December 18, 2001. (Doc. 95 Ex. E.)

The Wetherells still had problems with their unit, and on March 15, 2002, Fowler came out again and discovered a leak in the air coil unit of the ClimateMaster geothermal device and replaced the air coil unit with another. (Doc. 95 Ex. F.) On or before that time, both Dr. and Mrs. Wetherell knew that something was wrong with their unit. Mrs. Wetherell testified that she knew on March 15 that the reason for the problems was the failed air coil. (Dep. of Donna Wetherell 133–34.) She also

3

suspected that ClimateMaster was responsible for the unit's failure. (*Id.* at 134.) Dr. Wetherell also knew on March 15 of the unit failure (Dep. of Robin Wetherell 95–96), but in deposition admitted that he undertook no investigation of the cause of the failure afterwards (*id.* at 116). There is conflicting testimony as to whether Dr. Wetherell knew at the time of the March 15 coil failure that ClimateMaster was responsible for the failure (*Compare id.* at 95–96 ("Q. And you knew at least that you could take legal action against someone, right? A. That's correct."), *with id.* at 97–98 ("A. I didn't know that. Q. Didn't know what? A. That I could sue them. Q. Fowler, right? A. Anybody.")).

The unit continued to have problems. On February 17, 2005, technicians were called out to add one pound of refrigerant. (Dep. of Donna Wetherell 149–50.) Technicians came out again on September 30, found a refrigerant leak in the replacement air coil, so they added two more pounds of refrigerant and ordered a new air coil. (Dep. of Steven Fowler 131.) The new air coil was installed on December 7, but that air coil also had a leak. (Dep. of Donna Wetherell 155–57.)

At this point, the Wetherells were fed up with the ClimateMaster unit. Mrs. Wetherell believed by December 7 that the air coils were eroding. (*Id.* at 174.) Dr. Wetherell discussed with the Fowler organization "why the unit broke again" and "what needed to be done to fix it and what it would take to fix it." (Dep. of Robin Wetherell 100.) Eventually, the Wetherells replaced the ClimateMaster unit entirely with one purchased from a different manufacturer on December 27, 2005. (Doc. 101 Ex. 4.) They brought their suit almost two years later on September 6, 2007.

It turns out that, with the exception of conflicting evidence on the very last air coil ordered (*see* Doc. 95 Ex. I (indicating that the last replacement coil was coated)), the air coils were not coated with enamel (*see* Dep. of Steven Fowler 110–12, 140–42 (indicating that all replacement coils were uncoated)). ClimateMaster knew that its air coils tended to leak in the Illinois market. (*See* Doc. 101 Exs. 6, 7, 8.) Its employees had on several occasions recommended coating the air coils with

4

enamel, which is referred to as "e-coating," to remedy the problem. (*See* Doc. 101 Ex. 9, 11.) An e-mail from Douglas Wall, a ClimateMaster employee, indicates that enamel coated coils tended to resist corrosion better than uncoated ones. (Doc. 101 Ex. 11.) ClimateMaster never disclosed the fact that they knew its air coils tended to leak to any Illinois consumers, nor did it issue a standard communication to those consumers or dealers about the problems with the air coils. (Dep. of Andrew Taussig 143–44.) It also did not issue a recall or an offer to replace the coils with "e-coated" ones. (*Id.*) An expert witness indicated that air coils should outlast a geothermal heating and cooling system, which should last about fifteen years. (Dep. of Robert Block 163.)

## Analysis

Actions under the Consumer Fraud and Deceptive Business Practices Act "shall be forever barred unless commenced within 3 years after the cause of action accrued." **§ 10a(e), 815 Ill. Comp. Stat. 505/10a(e).** Additionally, actions for unjust enrichment must be commenced within five years of accrual. *See **Frederickson v. Blumenthal**,* **648 N.E.2d 1060, 1063 (Ill. 1995) ("All civil actions not otherwise provided for by statute shall be commenced within five years after the cause of action accrued. . . . Similarly, actions for unjust enrichment are also governed by the five year statute." (citing 735 Ill. Comp. Stat. Ann. 5/13-205 (West 1993))).** As the limitations on both actions run from when the cause of action accrued, the Court must first determine when the actions accrued based on the facts before the Court. Then the Court can decide whether or the statute of limitations has expired.

1. The actions accrued in March 2002.

Causes of action accrue in Illinois law on the basis of the "discovery rule." The statute

of limitations starts running "when a person knows or reasonably should know of his injury and also knows or reasonably should know that it was wrongfully caused." *Vector–Springfield Properties, Ltd. v. Cent. Ill. Light Co.*, **108 F.3d 806, 809 (7th Cir. 1997) (quoting** *Knox Coll. v. Celotex Corp.*, **430 N.E.2d 976, 980 (Ill. 1981)).** The standard does not demand that the plaintiff begin seeking the help of the courts once the plaintiff first has knowledge of the injury, nor does it allow the plaintiff to sit on his rights until the plaintiff knows that the sequence of events is a cause of action against someone. *See Knox Coll.*, **430 N.E.2d at 980 ("[W]e have held that the event which triggers the running of the statutory period is not the first knowledge the injured person has of his injury, and, at the other extreme, we have also held that it is not the acquisition of knowledge that one has a cause of action against another for an injury he has suffered." (citing** *Witherell v. Weimer*, **421 N.E.2d 869 (Ill.  1981);** *Nolan v. Johns–Manville Asbestos*, **421 N.E.2d 864 (Ill. 1981))).** If the standard were the latter, then lay plaintiffs could wait comfortably until a lawyer tells them that they can sue, thus defeating one of the primary purposes behind statutes of limitations, "to encourage claimants to investigate and pursue causes of action in order to discourage delay," *Langendorf v. City of Urbana*, **754 N.E.2d 320, 326 (Ill. 2001) (citing** *Golla v. Gen. Motors Corp.*, **657 N.E.2d 894 (Ill. 1995));** *see also Pavlik v. Kornhaber*, **761 N.E.2d 175, 186 (Ill. App. 2001) (noting that statutes of limitations are not there to shield wrongdoers but "to discourage the presentation of stale claims and to encourage diligence in the bringing of  actions"(quoting** *Hyon Waste Mgmt. Servs., Inc. v. City of Chi.*, **574 N.E.2d 129, 132 (Ill. App. 1991))).** The standard also does not demand that the plaintiff know the full extent of his or her injury before the clock begins ticking. *See Clay v. Kuhl*, **727 N.E.2d 217, 222 (Ill. 2000) ("'This court has never suggested that plaintiffs must know the full extent of their injuries before the statute of limitations is triggered. Rather,**

our cases adhere to the general rule that the limitations period commences when the plaintiff is injured, rather than when the plaintiff realizes the consequences of the injury or the full extent of her injuries.'" (quoing *Golla*, 167 Ill.2d at 364, 657 N.E.2d 894)). The need to discourage delay and encourage diligence "outweighs the right to litigate a claim." *Langendorf*, 754 N.E.2d at 326 (citing *Golla*, 657 N.E.2d 894).

Based on the evidence before the Court, Dr. and Mrs. Wetherell sat on their rights too long. Dr. and Mrs. Wetherell both testified that they knew of the failing coil on March 15, 2002. (Dep. of Donna Wetherell 133; Dep. of Robin Wetherell 95–96.) Mrs. Wetherell knew at the time that ClimateMaster and no one else was responsible for the coil failure (Dep. of Donna Wetherell 133). The Court holds that, with respect to Mrs. Wetherell, possessing those facts is "sufficient information . . . to put a reasonable person on inquiry to determine whether actionable conduct is involved," *Hoffman v. Orthopedic Sys., Inc.*, 765 N.E.2d 116, 122 (Ill. App. 2002) (quoting *Knox Coll.*, 430 N.E.2d at 980–81). Based on the March 15, 2002 date, her consumer fraud claim needed to be filed by March 15, 2005, and her unjust enrichment claim needed to be filed by March 15, 2007. Her claims were not filed until September of 2007.

Dr. Wetherell's actual knowledge at the time is less easy to categorize. He testified that he knew at the time of coil failure that he could take legal action against someone (Dep. of Robin Wetherell 96), but later in the deposition this sequence took place:

> Q. Why did you choose—if you knew the unit had failed [in] 2002, why did you not sue Fowler?
>
> A. Like I told you to begin with, Counsel, earlier in my deposition, I'm not a particular person that goes out inviting legal lawsuits.
>
> Q. But you knew you had the option?

A. I really never even stopped to think about it, to be quite honest with you.

Q. No one told you [that] you couldn't sue them, did they?

ATTY. SCHAFER: Let me make an objection that it calls for a conclusion of law. I don't know that he could have sued them. You can answer.

A. I didn't know that.

Q. Didn't know what?

A. That I could sue them.

Q. Fowler, right?

A. Anybody.

(*Id.* at 98).

Dr. Wetherell's deposition testimony is conflicting on the issue of actual knowledge, but he could have had constructive knowledge that his injury was wrongfully caused. If so, his actual knowledge would not be material. In this case, the lack of diligence on Dr. Wetherell's part is telling. Upon learning that his heater had failed, Dr. Wetherell did nothing. He admits as much in his deposition. (Dep. of Robin Wetherell 116). Lack of dilligence in discovering wrongful causation is evidence that the plaintiff had constructive knowledge that the injury was wrongfully caused. ***See Freeport Mem. Hospital v. Lankton, Ziegele, Terry & Assocs., Inc.,*** **525 N.E.2d 194, 197–98 (Ill. App. 1988) (concluding that plaintiff hospital had constructive knowledge of causation because it should have conducted further inquiry upon learning of injury and because waiting two years to conduct necessary inquiry was unreasonable).** Because Dr. Wetherell should have conducted further inquiry when his heater failed but elected not to do so, the Court finds that he had constructive knowledge of wrongful causation.

Although Dr. Wetherell testified that he did not know that he could sue until a few years after the initial failure (Dep. of Robin Wetherell 98), a layman failing to make a legal conclusion has no bearing on the analysis, as noted above. The clock starts ticking at the time of actual or constructive knowledge, and on the facts in the instant case, the Wetherells had actual knowledge of their injury and actual or constructive knowledge of its wrongful causation in March 2002.

The Wetherells offer two counter-arguments in spite of their deposition. First, the Wetherells argue that they had no actual knowledge of their injury until they noticed the pattern of failing coils in December of 2005, which led them to change heating units and to believe that ClimateMaster's coils were inherently defective. Again, this argument confuses knowledge of the injury and its wrongful causation (a defective coil that was ClimateMaster's responsibility) with knowledge of the cause of action (ClimateMaster selling defective coils in violation of the CFDBPA). As such, their first counter-argument is without merit.

The Wetherells' second counter-argument is that the sequence of events as presented by the summary judgment evidence indicates an ongoing tort such that March 2002 is not when the cause of action accrued. Instead, they claim that the cause of action should have accrued in December 2005. The Wetherells' argument references the "continuing violation" rule in Illinois, which permits the holding in abeyance of the statute of limitations until the last injury of the "continuing violation" occurs. *Feltmeier v. Feltmeier*, **798 N.E.2d 75, 89 (Ill. 2003).** The problem with applying the "continuing violation" rule to this case is that the doctrine only applies to certain kinds of torts. For example, the *Feltmeier* court *extended* the applicability of the continuing violation doctrine to spousal abuse cases. **See** *id*. **at 88 ("[W]e agree with the appellate court herein, the court in *Pavlik*, and with the growing number of jurisdictions that have found that the continuing tort rule *should be extended* to apply in cases of intentional infliction of emotional distress." (second emphasis added)).** The

9

Wetherells have not cited, and the Court has not found, any Illinois case holding that the continuing violation rule applies to CFDBPA cases.

Moreover, the Court need not decide whether the continuing violation rule applies to the CFDBPA because the conduct between March 2002 and December 2005 was not a continuing violation. The Wetherells bought their heat pump containing the supposed defective coil on June 15, 1999, with the defect discovered, as discussed above, in March 2002. They did not buy any other heat pumps. What occurred between March 2002 and December 2005 was their attempts to have that problem fixed. In other words, they attempted to remedy "continual ill effects from an initial violation," which is not a continuing tort. *See Feltmeier*, **798 N.E.2d at 86 (citing *Pavlik*, 326 Ill. App. 3d at 475, 761 N.E.2d 175).**

Because the evidence indicates that discovery rule applies commencing March 15, 2002, the Court accordingly holds that the statute of limitations for all remaining claims in this case begins March 15, 2002.

2. The Statute of Limitations Has Elapsed.

From the plaintiffs' actual knowledge, it is not hard to see that, without more, the statute has elapsed. The three years for the CFBPA claim, starting on March 2002, would end in March 2005. The five years for the unjust enrichment claim, starting on March 2002, would end in March 2007. Both occur before September 2007, when the Wetherells sued. Both causes of action, then, would normally be barred.

The Wetherells attempt to salvage by arguing that ClimateMaster fraudulently concealed the cause of action from them. If this is true, then plaintiffs would have extra time to bring suit. The pertinent statute provides:

> If a person liable to an action fraudulently conceals *the cause of such action* from the knowledge of the person entitled thereto, the action may be commenced at any time within 5 years after the person entitled to bring the same *discovers that he or she has such cause of action*, and not afterwards.

**735 Ill. Comp. Stat. 5/13-215 (2008) (emphasis added).**

Notice that the text of the statute is different from the discovery rule. The discovery rule concerns itself with actual or implied knowledge of injury *and* wrongful causation, but not knowledge of the cause of action. ***Knox Coll.*, 430 N.E.2d at 980 ("[W]e have held that the event which triggers the running of the statutory period . . . is not the acquisition of knowledge that one has a cause of action against another for an injury he has suffered.").** Fraudulent concealment concerns itself with the *concealment of the cause of action*. Judge Posner articulated this difference:

> Fraudulent concealment in the law of limitations presupposes that the plaintiff has discovered or, as required by the discovery rule should have discovered, that the defendant injured him. It denotes efforts by the defendant, above and beyond the wrongdoing upon which the plaintiff's claim is founded, to prevent, by fraud or deception, the plaintiff from suing in time.

***Shropshear v. Corp. Counsel of the City of Chi.*, 275 F.3d 593, 595 (7th Cir. 2001);** *see also id.* **at 597 ("Illinois has codified its doctrine of fraudulent concealment in a statute . . . ." (citing 735 Ill. Comp. Stat. 5/13-215)).** If ClimateMaster did in fact conceal the cause of action from the Wetherells, then the Court will not count from March 15, 2002—the date on which the Wetherells had actual and constructive knowledge of injury and wrongful causation—but will count from the actual date that the Wetherells discovered the cause of action, whenever that may be, and will count five years for both claims.

The Wetherells, though, did not provide enough discovery at summary judgment to raise a fact question on this issue. The only discovery they provide indicates that ClimateMaster "failed to

disclose" the defects in the coils when it sold the unit and when it provided service to the unit. In other words, ClimateMaster remained silent. "Silence alone on the part of the defendant, accompanied by the failure of the plaintiff to discover the cause of action, ordinarily does not constitute fraudulent concealment." *Chi. Park Dist. v. Kenroy*, **402 N.E.2d 181, 185 (Ill. 1980) (citing** *Jackson v. Anderson*, **355 Ill. 550, 557, 189 N.E. 924 (1934);** *Harvey v. Harris Trust & Sav. Bank*, **73 Ill. App. 3d 280, 287, 391 N.E.2d 461 (1979);** *Nogle v. Nogle*, **53 Ill. App. 2d 457, 464, 202 N.E.2d 683 (1964)).** There is an exception to the rule, though:

> [A]s between persons sustaining a fiduciary or trust or other confidential relationship toward each other, the person occupying the relation of fiduciary or of confidence is under a duty to reveal the facts to the plaintiff (the other party), and that his silence when he ought to speak, or his failure to disclose what he ought to disclose, is as much a fraud at law as an actual affirmative false representation or act; and that mere silence on his part as to a cause of action, the facts giving rise to which it was his duty to disclose, amounts to a fraudulent concealment . . . .

**L.S. Tellier, Annotation,** *What Constitutes Concealment Which Will Prevent Running of Statute of Limitations*, **173 A.L.R. 576, 588 (1948),** *quoted in Kenroy*, **402 N.E.2d at 185.** This exception is inapplicable here. There is no indication on the record whatsoever that ClimateMaster is a fiduciary of the Wetherells, nor have the Wetherells argued that ClimateMaster is a fiduciary. As such, the Wetherells' attempt to paint any failure on ClimateMaster's part to disclose the defects in its coils as a fraudulent concealment of the cause of action, while creative, is not well taken. At best, the Wetherells simply provide proof of their cause of action as the evidence of fraudulent concealment, which is far from "above and beyond the wrongdoing upon which the plaintiff's claim is founded." *Shropshear*, **275 F.3d at 595.**

12

## <u>Conclusion</u>

There is no genuine issue with respect to the Wetherells' knowledge that they were harmed by ClimateMaster in March 2002, meaning that under Illinois law this suit is brought too late. As the other legal theories presented—continuing violation and fraudulent concealment—do not apply, the Court accordingly **GRANTS** ClimateMaster's motion for summary judgment (Doc. 95). The Clerk of Court will enter judgment that Donna Wetherell and Robin Wetherell take nothing in their suit against ClimateMaster, Inc. Because there are no other plaintiffs in this case, the Court **DENIES AS MOOT** the motion for class certification (Doc. 84). All settings and deadlines in the case are **CANCELLED**, and the case is now closed.

**It is so ordered.**

**Dated** November 20, 2009.

s/ Michael J. Reagan
Michael J. Reagan
United States District Judge

13